945 F.2d 1371
 RICO Bus.Disp.Guide 7853
 David D. PALMER and Ok Sun Palmer, Plaintiffs-Appellants,
and Cross-Appellees,
v.
NATIONWIDE MUTUAL INSURANCE COMPANY; John Fisher; Donald
McFerson; John Harper; Cheryl Clark; Cheryl Fahnestock;
Ready, Sullivan and Ready; Thomas D. Ready; John J.
Sullivan; Durward L. Hutchinson; Siemion, Huckabay,
Bodary, Padilla and Morganti; Charles A. Huckabay; Kathy
Bennett; Roger Hunter; Thomas Meloy; Insurance
Rehabilitation Service; Margaret Tipple,
Defendants-Appellees, and Cross-Appellants,
Records Deposition Service; Upjohn Healthcare Services;
and Maggie Stoffel, Defendants.
 Nos. 90-1454, 90-1495.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 26, 1991.
Decided Oct. 2, 1991.
 
 E.J. Leizerman (argued and briefed), Stuart Allen Ascher, Leizerman, McGill & Williams, Toledo, Ohio, for plaintiffs-appellants, and cross-appellees.
 Daniel P. Malone, Butzel, Long, Gust, Klein & Van Zile, Kevin F. O'Shea, Edward M. Kronk (argued and briefed), Kenneth W. Morrison, Gregory W. Finley (argued and briefed), Detroit, Mich., for defendants-appellees, and cross-appellants.
 Before GUY and NORRIS, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Plaintiffs, husband and wife, David D. Palmer and Ok Sun Palmer, appeal from the district court's dismissal with prejudice of one count (or claim) based upon 18 U.S.C. § 1962, et seq., the so-called RICO statute, of a twelve-count complaint filed against an insurance company, a number of health care-related companies, a law firm, and a number of individuals. The district court determined that it lacked "subject matter jurisdiction over the balance of plaintiffs' complaint" after dismissing the RICO claim, the only federal claim in plaintiffs' 27-page complaint, and it thus dismissed the entire action as to all defendants.
 
 
 2
 Plaintiffs first claimed breach of contract by defendant Nationwide Mutual Insurance Company (Nationwide) following an automobile accident in which Mrs. Palmer received injuries in respect of her claim that Nationwide was obligated to pay her claimed continuing substantial medical expenses under a policy of insurance. Plaintiffs also asserted claims of fraud, extortion, conspiracy to defraud, "prima facie tort," and intentional tort, and charged defendants with aiding and abetting one another in respect to each wrongful act claimed.
 
 
 3
 Plaintiffs contend that Nationwide is obligated to pay them ongoing, major expenses for alleged disability and permanent injury under the Nationwide automobile policy and the no-fault laws of Michigan following the 1987 accident in Michigan. In their brief, plaintiffs maintain that the "thrust of the complaint is that Nationwide and its agents perpetrated numerous frauds and other illegal acts ... in order to avoid paying no-fault benefits to plaintiffs."[1]
 
 
 4
 One of the claims referred to similar state court litigation instituted by plaintiffs against several of the same defendants, including Nationwide. In state court, plaintiffs sued both the attorneys and the law firms which represented Nationwide. (Plaintiffs also sued separately, in state court, the Monroe County, Michigan Road Commission in respect of the automobile accident underlying this series of claims, and other defendants have subsequently been added). The state court action against the attorney representing Nationwide, Charles A. Huckabay, was dismissed summarily. Their action against Nationwide was dismissed with prejudice as a consequence of failure to comply with discovery orders.[2] Plaintiffs' cause of action against Nationwide's employee representative, Cheryl Fahnestock, remained for disposition, but shortly after filing this lawsuit, coupled with its RICO claim as a basis for federal jurisdiction, plaintiffs' action against Nationwide was reinstated in state court. However, the action against Fahnestock was dismissed without prejudice by the state court.
 
 
 5
 Defendants in their brief also make reference to yet another lawsuit involving plaintiffs; this case is in the Lucas County, Ohio Court of Common Pleas arising out of the same automobile accident. Defendants maintain that this is basically an insurance contract dispute, and that most of plaintiffs' extended complaint in the district court represented an attempt "to convert a breach of contract into a series of vague tort claims against virtually everyone who had touched the claim."
 
 
 6
 We agree with defendants that much of plaintiffs complaint, including the alleged fraud and extortion claims, involves essentially dissatisfaction about Nationwide's handling of the underlying insurance claims after Nationwide had made very substantial payments on Mrs. Palmer's account for a number of months. The "Fourth Claim" makes reference to a Michigan state court hearing and alleged evidence, which they label false, submitted in that court and their claim of "fraudulent concealment" under a Michigan court rule. Plaintiffs seek nine million dollars damages on this "Fourth Claim" alone. We AFFIRM the dismissal of the RICO claim.
 
 I. RICO CLAIM
 
 7
 Under 18 U.S.C. § 1962, et seq., the RICO statute, the "person" responsible for violation of the statute must be separate from the alleged criminal enterprise itself. Newmyer v. Philatelic Leasing, Ltd., 888 F.2d 385, 397 (6th Cir.1989), cert. denied sub nom. Trager, Glass & Co. v. Newmyer, --- U.S. ----, 110 S.Ct. 2169, 109 L.Ed.2d 499 (1990); Fleischhauer v. Feltner, 879 F.2d 1290, 1297 (6th Cir.1989), cert. denied, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990); Bennett v. United States Trust Co., 770 F.2d 308 (2d Cir.1985), cert. denied, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). The plaintiffs failed to indicate the nature of the alleged criminal enterprise. They refer to, among other things, Fahnestock and to an attorney Hutchinson as having been involved in sending letters about a scheduled medical examination for Mrs. Palmer, which examination was allegedly rescheduled to another date by the doctor, and about handling of medical bills. Plaintiffs assert that Hutchinson falsely attested that certain Michigan court papers were served upon plaintiffs' counsel and that he made misrepresentations to the state court about Mrs. Palmer's dealings with the doctor. Fahnestock and attorney Hutchinson are averred to have acted as agents "on behalf of all defendants" so that Nationwide would be dismissed as a defendant in the state action.
 
 
 8
 We find the complaint fails to state a RICO claim not only with respect to the "person" and "enterprise" distinction, but it also fails with regard to the continuity requirement set out in H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).
 
 
 9
 Plaintiffs make reference to mailings by Fahnestock and Hutchinson on December 8, 1988, and in March, April, June, and July of 1989 concerning submission of claims for payment, medical records, and medical examinations. Plaintiffs also allege that in August and September, 1989, Hutchinson sent letters to plaintiffs' attorney regarding medical authorizations.
 
 
 10
 The allegations are vague and conclusory about fraud or concealment or false statements as being predicate acts for RICO purposes. The allegations about a course or pattern of conduct by Nationwide, the alleged enterprise, and its agents and attorneys make no specific reference to criminal violations; rather, they involve conclusory suppositions that the communications involved falsities, misrepresentations, or concealments.
 
 
 11
 The complaint completely fails to state any kind of RICO activity on the part of defendant Insurance Rehabilitation Services (IRS). Defendant Tipple is accused only of falsely denying to plaintiffs her "knowledge or involvement in" state litigation instituted by plaintiffs. This is no basis for a RICO claim against Tipple or her employer, IRS.
 
 
 12
 Hutchinson and the law firm, Ready, Sullivan & Ready, are named as having mailed letters to plaintiffs "by and through their counsel" that claims for benefits "be submitted directly to him" due to pending state court litigation handled for Nationwide by that firm. Plaintiffs make a conclusion that "said statements were false." There is, however, no reference to what statements were false--the letter simply constituted a demand for handling claims and indicated a need for certain medical records. Plaintiffs claimed that the law firm sought medical authorizations from Ok Sun Palmer which she claims are "confidential records" or "privilege," and adds that such records were sought for "discovery for trial."
 
 
 13
 The complaint further charges Fahnestock (the Fifth claim) with a certain letter demand of October 20, 1989, for a further medical examination, unnecessary execution of records authorization information, and release for earnings information, which plaintiffs characterize as "a complete invasion of privacy." Even if true, this claim is no basis whatever for a RICO claim against any defendant. Emphasis in the RICO statute is upon "racketeering," "criminal conduct," "criminal act," and a "pattern" of criminal activity, coupled with "relationship and continuity." 18 U.S.C. § 3575(e); H.J., Inc., 492 U.S. at 242-43, 252-53, 109 S.Ct. at 2902, 2907. There is no basis for treating acts of the kind described as performed by the defendant lawyers and law firms to be a RICO violation or predicate criminal conduct in their representation of defendant Nationwide.
 
 
 14
 This case unquestionably and principally concerns Nationwide's handling of insurance claims by a third party beneficiary, Ok Sun Palmer. Plaintiffs describe actions taken by various employee representatives of Nationwide in the complaint, and they disagree with the motivations and reasons for defendants seeking medical and other information relative to handling these insurance claims. Nowhere do plaintiffs mention defendants Fisher, McFerson, and Harper except to describe them respectively as Chief Executive Officer, President, and Vice President for Legal Affairs of Nationwide. They claim that these three principal officers "knew or should have known of the conducts and acts hereinafter alleged and acquiesced in and ratified the same." It is not enough to make such a broad and vague allegation about individual principal officer defendants of a large insurance company which handles thousands and thousands of claims to seek to hold them personally responsible under RICO for treble damage claims and punitive damages. They were properly dismissed.
 
 
 15
 Plaintiffs use the term "extort" and "extortion" for certain actions of defendants, yet they make no claim of any payments made by them to, or sought from them by, the various defendants. The real effect of plaintiffs' contention is set out in the Fifth claim ("extortion")--to "suffer nonpayment" unless she submitted to medical examinations, to execute records authorization documents, and to furnish earnings and other information relevant to her claims which had already amounted to more than $400,000 paid by defendant Nationwide. To use the language expressed in H.J., Inc., while it "cannot be fixed in advance ... the precise methods by which relatedness and continuity" are established, it is "apparent ... in [this] particular case a 'pattern of racketeering activity' " does not exist as set out in this complaint as to any defendant under RICO requirements. 492 U.S. at 243, 109 S.Ct. at 2902.[3]
 
 II. AMENDMENT
 
 16
 Plaintiffs also contend that the district court erred in not permitting them to amend to cure deficiencies with respect to the "Eighth Claim," the RICO count. The district court determined that "any amendment of the RICO claim would be futile," holding also that "the vague predicate acts which Plaintiffs do allege could hardly be said to be a criminal activity at all." The district court referred to the correspondence and communications which plaintiffs characterized conclusively as mail and/or wire fraud as "merely disputes over insurance benefits, nothing more, nothing less."
 
 
 17
 We have had occasion to consider a party's claim of malice or tortious conduct arising from a contracting party's alleged failure to carry out the contract or agreement.
 
 
 18
 "The character of an action as one in tort or an action ex-contractor is determined by whether it arises from the breach of some agreement of the parties" ... it is no tort to breach a contract, regardless of motive. A tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed ... when the promisee's injury consists merely of the loss of his bargain, no tort claim arises....
 
 
 19
 Battista v. Lebanon Trotting Ass'n, 538 F.2d 111, 117 (6th Cir.1976) (quoting, in part, 10 Ohio Jur.2d Actions, § 16 at 273 (1953)).[4]
 
 
 20
 The actions of defendants set out in the complaint relate primarily to alleged failures to carry out Nationwide's insurance contract obligations to Mrs. Palmer, or, at most, an alleged failure to act in good faith with regard to paying Palmer's claims for medical benefits. These actions are essentially breaches of contract, or a kind of failure to perform a species of fiduciary duty arising from the contractual obligation. There was no error in denying amendment because it is clear that plaintiffs have no basis for claiming predicate criminal acts under RICO arising from this controversy.
 
 III. PARTICULAR PARTIES
 A. David Palmer
 
 21
 We hold that David Palmer has demonstrated no standing under 18 U.S.C. § 1964(c) as a "person injured in his business or property by reason of a violation" of RICO provisions. The complaint in the "First Claim" sets out that Ok Sun Palmer was involved in an accident; that Nationwide is liable for all her medical expenses as a proximate result; that Nationwide is liable to her under Michigan's nofault statutes; and that Nationwide has refused promptly to reimburse her for her necessary expenses and medical care.
 
 
 22
 In the following claims, the complaint makes reference to letters and communications sent to "plaintiffs" and their attorneys; attempts to have Ok Sun Palmer undergo medical examinations and execute authorization forms; state court actions involving certain defendants and "plaintiffs"; failure to divulge information to "plaintiffs"; alleged conspiratorial acts to "perpetrate an extortionate demand" on plaintiffs (by means of a letter or letters); "conduct with malice and ill will towards plaintiffs;" intended actions on defendants' part; aiding and abetting in such conduct; and unjust enrichment of defendants. Nowhere is it alleged just how David Palmer had any contractual or other rights against the defendants, nor is it set out as to what duty was owed David Palmer by defendants, nor how any defendant deprived him of a benefit due him.
 
 
 23
 In the state court proceedings, moreover, the complaint of David Palmer, relying on substantially the same claims and contentions, arising out of the same course of conduct and the same Nationwide insurance policy, were dismissed with prejudice. David Palmer is now estopped from proceeding on these same basic claims against defendants, and he is precluded by principles of res judicata from pursuing claims against Nationwide or its agents, Huckabay (or his partners and law firm), and Fahnestock, defendants in the state action.
 
 
 24
 B. Attorneys Ready, Sullivan & Ready (Thomas D. Ready, John J. Sullivan, Durward L. Hutchinson); Siemion, Huckabay, Bodary, Padilla and Morganti; and Charles A. Huckabay
 
 
 25
 No contractual duty was alleged to be due Mrs. Palmer (or her husband) from the attorneys who represented Nationwide in this dispute. The letters and communications from these attorneys and firms simply do not reflect any predicate criminal act within the meaning of RICO. Actions of the attorneys, as counsel of Nationwide and its agents-employees, were in defense of litigation instituted by plaintiffs, or to set out their client's position with respect to handling and processing claims submitted by and on behalf of Ok Sun Palmer. No RICO claim is alleged under the circumstances of this controversy against the defendant attorneys.
 
 
 26
 The dismissal of the similar state court claim by Ok Sun Palmer against Huckabay is also res judicata as to plaintiffs' claim against him, his partners, and his law firm.
 
 
 27
 C. Nationwide Officers Fisher, McFerson, and Harper
 
 
 28
 The complaint makes reference to no conduct or activity by any of these principal executives of Nationwide which directly involves any of them in any way with transactions and communications made or effected by Nationwide agents and representatives with plaintiffs. Ordinarily, officers and directors of corporations are not deemed at law to be conspirators with the employing entity. Plaintiffs set out no basis for claims under RICO against any of said officers by reason of respondeat superior, or otherwise, under the facts alleged and the exhibits to the pleadings.
 
 
 29
 D. Nationwide employees/agents: Clark, Harper, Bennett and Hunter
 
 
 30
 These individual defendants are mentioned only once in the complaint. In the "second claim," they are mentioned, together with others, as causing attorney Huckabay's letter of December 8, 1988, to be sent to plaintiffs and in connection with a telephone call and a December 12, 1988 letter to plaintiffs by defendant Fahnestock. This vague, unspecific and unconnected reference to these defendants is completely insufficient as a basis of a RICO (or any other legitimate) claim against defendants.
 
 E. Meloy, Tipple and Stoffel
 
 31
 Meloy, described as an "agent" of Nationwide, is first mentioned in the complaint in the same fashion as the others referred to in section D above. He is mentioned again as traveling to Columbus, Ohio, on April 12, 1989, to attend a meeting with Nationwide lawyers and defendants Tipple, Fahnestock and Stoffel. Meloy is not otherwise mentioned.
 
 
 32
 Tipple, another "agent" of Nationwide, is mentioned for the first time as attending the same meeting with Meloy, and then again as meeting with plaintiffs in their home to hear "numerous complaints regarding Nationwide" as to "pending litigation" in state court. Plaintiffs aver that she falsely denied knowledge of an involvement in that litigation and was reimbursed by Nationwide for participation in the alleged April 12, 1989 meeting.
 
 
 33
 Stoffel, described as "agent and servant of Nationwide and Upjohn" (Upjohn Healthcare Services, another defendant), is mentioned only in connection with the same meeting.
 
 
 34
 The vague, unspecific and unconnected references to these defendants are likewise completely insufficient as a basis of a RICO (or other) claim against defendants.
 
 
 35
 F. Upjohn, IRS, and Records Deposition Service
 
 
 36
 Upjohn is mentioned only with respect to two reimbursement checks, totalling less than $1,000, issued to it by Nationwide in 1989. Plaintiffs claim that, despite their request, "no documents of any kind were turned over regarding Upjohn" in their "third claim." Upjohn's alleged connection to breaches or wrongdoing by Nationwide, its lawyers or agents, is not otherwise spelled out in any fashion.
 
 
 37
 We are able to find no reference at all in the complaint to conduct of IRS. Records Deposition Services (RDS) is mentioned only in the "third claim" by allegations that RDS and two defendant lawyers sent a letter to plaintiffs that "eleven of twenty executed medical authorizations had been sent to providers of medical care," and that RDS required further medical authorizations. Plaintiffs claim RDS, together with Nationwide's lawyers, "attempted to induce Ok Sun to executed [sic] medical authorizations" which would allegedly violate her privacy and confidentiality rights.
 
 
 38
 There is no basis whatever, then, in the complaint for any RICO claim, or any other legal claim, as to defendants Upjohn and IRS. The claim for invasion of privacy in seeking medical authorizations from the insurance claimant, Mrs. Palmer, falls far short of any basis for stating a predicate act, criminal in nature, as to RDS.
 
 G. Nationwide
 
 39
 At the time this proceeding in district court was filed, plaintiffs' action of similar kind and import (except the RICO claim) against Nationwide had been dismissed in state court. Principles of estoppel and res judicata at that particular juncture would preclude all the claims made. The RICO claims are based upon the other alleged actions and conduct of Nationwide in handling plaintiffs' claims for insurance benefits, and in defending itself through its attorneys from charges and lawsuits in state court. While dismissal of Nationwide might be appropriate on this rationale alone, we find no error in the district court's judgment of dismissal upon its consideration of the merits of plaintiffs' claim under RICO.
 
 IV. SANCTIONS
 
 40
 A number of defendants[5] moved for sanctions under Fed.R.Civ.P. 11 against plaintiffs. The district court, without explanation and absent any response by plaintiffs, denied the motion conceding "it's a close question, because I almost find this an abuse of process." We have held, particularly in the "close" or serious sanction cases, that the district court should set out its "analysis and discrete findings" with respect to its decision on the allowance or rejection of sanctions. In re Ruben, 825 F.2d 977, 991 (6th Cir.1987), cert. denied sub nom, Swan v. Ruben, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). See also Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1084 (7th Cir.1987) (en banc); LaVay Corp. v. Dominion Fed. Sav. & Loan, 830 F.2d 522 (4th Cir.1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988). We review the decision on sanctions, after such analysis and findings, on an abuse of discretion standard. Albright v. Upjohn Co., 788 F.2d 1217 (6th Cir.1986).
 
 
 41
 Circumstances in this case: (1) several similar filings in different courts; (2) the joinder of some defendants with little apparent connection with the real controversy; (3) ignoring of dismissal with prejudice; and (4) failure to respond to the sanctions motion in a case characterized as "close" and "almost an abuse of process;" all convince us that the district court must review and consider carefully sanctions implications in this case, particularly as to some defendants.
 
 
 42
 We, therefore, REMAND this case for further consideration and explanation of the district court's position on the Rule 11 sanctions issue.
 
 
 43
 We AFFIRM the district court with respect to dismissal of all defendants for the reasons stated.
 
 
 
 [1]
 Mrs. Palmer, a resident of Ohio, was injured while driving her daughter's automobile in Michigan. The daughter's automobile coverage was with Nationwide. All defendants claim that Mr. Palmer was not involved in the accident and has "asserted no direct claim for relief of any kind." David Palmer's claims were dismissed with prejudice in the state court. He claims damages arising out of the same course of conduct
 
 
 [2]
 Mrs. Palmer's claims in this proceeding closely track her claims against Huckabay, his partners and his firm in the state court. The state court's prior dismissal with prejudice operates as a bar to her bringing similar claims in this court in any event against said defendants. Dyer v. Intera Corp., 870 F.2d 1063 (6th Cir.1989); George v. United Kentucky Bank, Inc., 753 F.2d 50 (6th Cir.), cert. denied sub nom., George v. Liberty Nat'l Bank & Trust Co. of Louisville, 471 U.S. 1018, 105 S.Ct. 2024, 85 L.Ed.2d 306 (1985)
 
 
 [3]
 One looks in vain for pertinent allegations in the complaint for RICO violations against defendants Upjohn Healthcare Services or Stoffel
 
 
 [4]
 Battista recognizes that an insurance carrier in Ohio may, under limited or special circumstances, owe a duty of "good faith and fair dealing."
 
 
 [5]
 All defendants moved for sanctions except IRS, Tipple, RDS, Upjohn, and Stoffel