Kenneth R. HILLIARD and Gregory D. Styles, Trustee under Trust Agreement dated May 5, 1979, Plaintiffs,

v.

SHELL WESTERN E & P, INC., a Delaware corporation, Defendant.

No. 5:93–CV–21.

United States District Court, W.D. Michigan, S.D.

Nov. 2, 1993.

Dale W. Rhoades, Kurt D. Hassberger, Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, MI, Philip R. Rosi, John W. Tilley, Rosi, Senger & Tilley, PC, Traverse City, MI, for plaintiffs.

Webb A. Smith, Scott A. Storey, Foster, Swift, Collins & Smith, PC, Lansing, MI, for defendant.

## OPINION

QUIST, District Judge.

Plaintiffs are holders of royalty interests as lessors of mineral rights in oil wells leased to defendant Shell Western E & P, Inc. (Shell). They claim that Shell has wrongfully deducted from their royalty payments a 1% pro rata share of the regulatory fee imposed under the Michigan Supervisor of Wells Act, Act 61 of the Michigan Public Acts of 1939, as amended, M.C.L.A. § 319.1 *et seq.*, M.S.A. § 13.139 (1) et seq. (Act 61). Shell acknowledges that it has deducted the fee, but denies that it has acted wrongfully.

### Defendant's Position

Shell moved for summary judgment on all counts of plaintiffs' Complaint. With respect to Count I, which alleges that Shell has breached its contracts by deducting the fee, Shell argues that it acted within its rights on the authority of *Brown v. Shell Oil Co.*, 128 Mich.App. 111, 339 N.W.2d 709 (1983), *appeal denied*, 424 Mich. 867 (1986), *cert. denied*, 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986). *Brown v. Shell* held that royalty payments were subject to severance taxes on oil and gas assessed pursuant to another Michigan statute, Act 48 of the Michigan Public Acts of 1929 as amended, M.C.L.A. §§ 205.301–205.315, M.S.A. §§ 7.351–7.365 (Act 48). Shell also alleges that Count I is barred by res judicata because plaintiffs' claim includes the same parties and a claim arising out of the same circumstances as the first case, which claim could have been raised in the earlier case.

On Count II, which requests that the Court declare Act 61 unconstitutional if it is read to require payment by lessors, Shell maintains that the issue is not ripe for constitutional adjudication because it is pled as alternative relief. Shell also seeks to dismiss Count II on the grounds that plaintiffs have sued the wrong party and must bring the constitutional claim against the taxing body and not against Shell.

In Count III, plaintiffs claim that Shell's repeated deduction of the Act 61 fee under the guise of a "severance tax" constituted

fraud. Shell argues that judgment should be entered against plaintiffs on the fraud claim because there has been no material misrepresentation and no intent to deceive. It also maintains that this claim should be dismissed because plaintiffs failed to plead sufficient facts to show a specific intent to deceive and failed to plead reliance or damages as a result of reliance.

Count IV requests an accounting. Shell argues that plaintiff has not pled sufficient facts to justify the equitable remedy of an accounting and that the availability of discovery makes an accounting unnecessary.

With respect to Count V, a RICO claim, Shell argues that plaintiffs have failed to state a claim for mail fraud for the same reasons they failed to state a general claim for fraud. Shell also maintains that plaintiffs have failed to allege damages to business or property as a result of the alleged fraud. In a supplemental motion, Shell seeks dismissal on the grounds that plaintiffs failed to allege the existence of a "person" separate and distinct from an "enterprise" as required by 18 U.S.C. § 1962(b) and failed to allege the elements of mail fraud with sufficient particularity.

### Plaintiffs' Position

Plaintiffs moved for summary judgment only on Count I, on the issue of the legality of deducting the Act 61 fee from their royalty payments. They argue that the payment is a regulatory fee which Shell is not authorized to deduct in the absence of lease language permitting such a deduction.

In response to Shell's motion, plaintiffs assert that their claim is not blocked by res judicata because *Brown v. Shell, supra,* addressed a different type of fee or tax and thus dealt with a different issue. Plaintiffs maintain that the constitutional challenge in Count II is valid because a reading in favor of Shell would violate the Michigan Constitution. On Counts III and V, the fraud and RICO counts, plaintiffs argue that there are questions of fact that bar summary judgment. They do not disagree with defendant that the equitable relief of an accounting requested in Count IV is unnecessary in this instance.

### DISCUSSION

#### Standard for Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511.

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S.

574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Standard for Dismissal

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. All factual allegations in the complaint must be presumed to be true and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.-07[2.5] (2d ed. 1991). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Dismissal is also proper if the complaint fails to allege an element necessary for relief or "if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as the official immunity of the defendant...." 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.07[2.5] (2d ed. 1991).

### Statutory Interpretation

The fee statute at issue in this litigation, Act 61 of the Michigan Public Acts of 1939, as amended, provides as follows:

**319.22. Fee for monitoring, surveillance, enforcement, and administration of act**

Sec. 22. (1) For the purposes of monitoring, surveillance, and administration of this act, a fee not in excess of 1%, based upon the gross cash market value is levied upon oil and gas produced in this state. The fee shall be collected by the revenue division of the department of treasury in the same manner, at the same time, and subject to the provisions of the tax levied by Act No. 48 of the Public Acts of 1929, being sections 205.301 to 205.317 of the Michigan Compiled Laws.

M.C.L.A. § 319.22, M.S.A. § 13.139(22).

Act 48, to which Act 61 refers, provides:

**205.301. Severance tax on oil or gas**

Sec. 1. There is hereby levied upon each producer engaged in the business of severing from the soil, oil or gas, a specific tax to be known as the severance tax. M.C.L.A. § 205.301, M.S.A. § 7.351.

In both instances, payment is collected from producers, but there is a marked difference in how "producer" is defined. Act 48 defines "producer" as "a person who owns, or is entitled to delivery of a share in kind or a share of the monetary proceeds from the sale of, gas or oil as of the time of its production or severance." M.C.L.A. § 205.312, M.S.A. § 7.362. In contrast, Act 61 defines "producer" as "the operator, whether owner or not, of a well or wells capable of producing oil or gas or both in paying quantities." M.C.L.A. § 319.2(h), M.S.A. § 13.139(2)(h).

The Michigan Attorney General analyzed both Acts in 1963. At that time, the Act 61 heading still referred to a "privilege tax" rather than a "fee" and the definition of "producer" in Act 48 had not yet been amended to include those holding a royalty interest. Addressing the question of whether the State of Michigan was liable for payment of a pro rata share of the Act 61 fee and the Act 48 tax, the Michigan Attorney General ruled that the state was not liable because, as a lessor, it was not a "producer" and because imposition of a tax on the state requires positive legislative action. O.A.G. 1963–1964 No. 4160 (June 17, 1963).

After the Attorney General issued his opinion, the Michigan legislature amended the definition of "producer" to include lessor in Act 48 and exempted the state from the tax. The Michigan Court of Appeals subsequently analyzed Act 48, as amended, in *Brown v. Shell Oil Co.*, 128 Mich.App. 111, 339 N.W.2d 709 (1983), *appeal denied,* 424 Mich. 867 (1986), *cert. denied,* 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986), a case brought by holders of royalty interests as lessors of mineral rights in oil wells leased to Shell Oil Company. The Michigan Court of Appeals held that it was legitimate for Shell to assess a pro rata share of the Act 48 severance tax against the lessors because the amended statute included them within the definition of producers. The court distinguished between a gross production tax, such as Act 48, which is levied in place of property tax, and a license, privilege, or occupation

tax, and explained that "because the severance tax is in lieu of other related property taxes, it is assessable against royalty holders as well as lessees who are actually engaged in the business of severing the oil or gas from the soil." 128 Mich.App. at 119, 339 N.W.2d at 713.

Plaintiffs urge this Court to follow the Attorney General's Opinion and hold that it is unlawful to pass along the Act 61 fee absent a contractual provision. An Attorney General Opinion is not a binding interpretation of law that this Court must follow. *Traverse City School District v. Attorney General*, 384 Mich. 390, 185 N.W.2d 9, 17 (1971). Moreover, the Attorney General's Opinion rested on the general exemption of state property from taxation absent positive legislation. Thus, his analysis that a pro rata share should not be assessed because the state, as lessor, was not a producer can be characterized as dicta.

Shell argues that judgment should be entered in its favor on the basis of the *Brown v. Shell* decision, which held that Act 48 taxes could be assessed against the lessors. Shell notes that the Act 61 fee is to "be collected by the revenue division of the department of treasury in the same manner, at the same time, and subject to the provisions of the tax levied by Act No. 48 of the Public Acts of 1929." In its first brief, it argues that the tax is levied on "producers" and that plaintiffs must be considered producers pursuant to Act 48 and *Brown v. Shell.* The Act 61 definition of producers differs from the Act 48 definition, however, and does not include lessors. It defines producers as well operators. M.C.L.A. § 319.2(h), M.S.A. § 13.-139(2)(h). Plaintiffs, as lessors, are not operators in connection with the production of oil and gas. *Mobil Oil Corp. v. Dep't of Treasury*, 121 Mich.App. 293, 328 N.W.2d 367 (1982), *aff'd*, 422 Mich. 473, 373 N.W.2d 730 (1985). The Act 61 reference to Act 48 cannot be read to somehow amend Act 61's definition of producers. Thus, Shell's argument that the Act 61 assessments it has made against the lessors are required by statute fails.

Shell also argues that the Act 61 fee should be assessed against lessors because it is levied on "oil and gas produced" and a share of the oil and gas belongs to plaintiffs under the leases, which provide for payment in kind or at market value.[1] Shell also argues that market value or "proceeds" that plaintiffs are paid under the lease are after-tax proceeds. While this conclusory statement is valid for the Act 48 severance tax pursuant to *Brown v. Shell*, the distinction the *Brown* court made between taxes imposed in lieu of property taxes and license or privilege fees blocks its application to Act 61 fees.

Act 61 imposes a regulatory fee rather than a tax. The purpose of the Act is to regulate wells for the prevention of waste. M.C.L.A. § 319.1, M.S.A. § 13.139(1). Section 22, which imposes the fee, states that it is "[f]or the purpose of monitoring, surveillance, enforcement and administration of this act." M.C.L.A. § 319.22, M.S.A. § 13.-139(22). Expenditure of the monies collected is limited to that purpose.[2] In contrast, Act

---

1. The royalty payment provision of the leases attached to the Complaint as Exhibits 1 and 2 state:

> 4. The lessee shall pay lessor, as royalty, one-eighth of the proceeds from the sale of the gas, as such, produced from gas wells on leased premises, and where not sold shall pay Fifty Dollars ($50.00) per annum as royalty from each such well, and such well shall be held to be a producing well under paragraph numbered two hereof. The lessor to have gas free of charge from any gas well on the leased premises for stoves and inside lights in the principal dwelling house on said land by making his own connections with the well, the use of said gas to be at the lessor's sole risk and expense. The lessee shall pay to lessor for gas produced from any oil well and used by the

> lessee for the manufacture of gasoline or any other product, as royalty, one-eighth of the market value of such gas at the mouth of the well. If said gas is sold by the lessee, then as royalty one-eighth of the proceeds of the sale thereof.

2. Act 61, section 22, provides:

> (3) The proceeds of the fee provided for in this section shall be credited to the general fund and appropriated by the legislature toward the cost of monitoring, surveillance, enforcement, and administration of this act.
> (4) An unexpended fee collected during the current or any previous fiscal year, or an unexpended appropriation, shall be carried over and deducted from the following year's appro-

48 provides: "The severance tax herein provided for shall be in lieu of all other taxes, state or local, upon the oil or gas, the property rights attached thereto or inherent therein, or the values created thereby; upon all leases or the rights to develop and operate any lands in this state for oil or gas, the values created thereby and the property rights attached to or inherent therein." M.C.L.A. § 205.315, M.S.A. § 7.365.

As the *Brown v. Shell* court suggested by drawing a distinction between severance and privilege taxes and holding that the severance tax was assessable against royalty holders "because the tax is in lieu of other related property taxes," it is inappropriate to assess a regulatory fee like that assessed under Act 61 against the lessor, absent an agreement in the lease that the lessor will pay a share of the fee.

Defendant admits that the leases attached to the Complaint as Exhibits 1 and 2 are copies of leases held by plaintiffs Styles and Hilliard. The provision of those leases regarding payments, which is quoted in footnote 1, provides that lessors will be paid a percentage of the gross proceeds of the gas and oil sold. There is no provision allowing a deduction for a payment that is not the responsibility of the lessors. Thus, with respect to the leases cited in the Complaint, Shell's deduction of the Act 61 fee is a breach of contract.

For the reasons stated above, plaintiffs' motion for partial summary judgment is granted and Shell's motion as to Count I is denied. In light of the Court's decision on Count I, plaintiffs' constitutional claim, Count II, is moot. Defendant's res judicata argument must, however, be addressed because it has the potential of requiring dismissal of the contract claim prior to reaching judgment on the merits.

### Res Judicata

The res judicata issue is whether *Brown v. Shell* bars portions of this action. Under Michigan law, the doctrine of res judicata is used "to bar both claims actually litigated by parties in prior actions and claims that could have been, but were not, litigated." *City Communications, Inc. v. City of Detroit,* 888 F.2d 1081, 1089 (6th Cir.1989) (citing *Gose v. Monroe Auto Equip. Co.,* 409 Mich. 147, 162–63, 294 N.W.2d 165, 167 (1980)). In *City Communications,* plaintiff's First Amendment claim was barred on the grounds that plaintiff had been afforded the opportunity to amend its complaint to add constitutional claims in a previous action and had failed to do so. 888 F.2d at 1088–91.

In response to Shell's allegation that plaintiffs' contract claim is barred by res judicata, plaintiffs argue only that their claims are not barred because the instant claims differ from the claims raised in *Brown v. Shell.* Plaintiffs do not dispute that the parties are the same. In addition, plaintiffs make no assertion that the claims could not have been brought as a part of *Brown v. Shell.* On the other hand, Shell has provided no evidence that plaintiffs were afforded a full opportunity to bring their claims regarding Act 61. In the instant complaint, plaintiffs allege that they did not know of the additional deduction until 1989. Thus, it appears that plaintiffs were not aware, at the time they brought the *Brown v. Shell* action, that the tax deduction Shell was taking from their royalties included the Act 61 fee in addition to the Act 48 severance tax. Even if plaintiffs had or could have became aware of the dual nature of the deduction during the pendency of *Brown v. Shell,* that case was determined on summary judgment and there is no evidence that plaintiffs would have been afforded a chance to amend their complaint to include the Act 61 claims.

On the basis of the current record, the res judicata claim is denied. It does not appear that the Act 61 claims were ripe for adjudication or that plaintiffs had the opportunity to bring them before the court in the *Brown v. Shell* litigation.

### RICO AND FRAUD

#### Fraud Claim

Shell argues that Count V, the RICO claim, should be dismissed because plaintiffs

---

priation in determining an amount to be certified by the director of the department of management and budget to the department of trea-

sury for computing the annual fee provided for in this act.
M.C.L.A. § 319.22, M.S.A. § 13.139(22).

have not pled the elements of mail fraud with sufficient particularity. It also argues that the fraud claim, Count III, should be dismissed or that summary judgment should be granted because plaintiffs have offered no evidentiary support for their fraud claim. The elements of actionable fraud under Michigan law are as follows:

> The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976) (quoted in *Schwartz v. Electronic Data Systems, Inc.,* 913 F.2d 279, 285 (6th Cir.1990)).

■ In the Complaint, plaintiffs allege that since at least 1983, Shell made it a practice to withhold Act 61 regulatory fees from plaintiffs' royalty payments and to conceal the withholding by identifying it as a "tax." Plaintiffs also allege that Shell knew the regulatory fee was not an obligation of plaintiffs and was not an authorized withholding. In addition, plaintiffs allege that Shell used the mails to transmit the check stub advices and other data that disguised the Act 61 regulatory fee deduction as a tax and attach examples of the documents to their Complaint. These allegations are sufficient to state a cause of action in fraud, including mail fraud. "[A] mailing that is incident to an essential part of the scheme" satisfies the mailing element of the mail fraud offense. *Schmuck v. United States,* 489 U.S. 705, 712, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734 (1989) (citation omitted).

■ Shell also argues that the facts do not support plaintiffs' fraud claim. It maintains that it did not engage in misrepresentation or intentional deception by deducting the Act 61 fee as a tax, but, instead, used the language used in the Attorney General's Opinion and the term originally used in the statute, which described the Act 61 fee as a "privilege tax." Shell attached to its summary judgment motion examples of instances when the State of Michigan referred to the Act 61 fee as a tax, but does not attach an affidavit linking these documents with any action Shell took or failed to take.

Plaintiffs likewise refer in their summary judgment briefs to documents attached to pleading but do not include affidavits. Their response to Shell's motion for summary judgment refers to the letters attached to plaintiffs' Complaint, which document the inquiry counsel made in 1989. (*See* Complaint, Exhibits 3, 4, 5, 6). Defendant, in its answer to the Complaint, did not deny the genuineness or authenticity of the letters but instead responded that the documents speak for themselves. These letters show that the Act 61 fee was withheld as a "tax" and that plaintiffs were informed of that fact in 1989. On the basis of plaintiffs' response to defendant's summary judgment motion and the documents they cite, it appears that there are questions of fact regarding whether there were intentional misrepresentations and reliance. Shell thus is not entitled to judgment on the fraud claim or on the RICO claim on the grounds that there is no fraud.

■ Shell also seeks to defeat the RICO claim by arguing that plaintiffs have failed to allege damages to business or property as a result of the alleged fraud. It claims that plaintiffs "must allege a separate and traceable injury 'stemming directly from the Defendants' alleged use or investment of their [allegedly] illegally obtained income in the [RICO] enterprise.'" Defendant's Motion for Judgment on the Pleadings at 7 (quoting *Arioli v. Prudential–Bache Securities, Inc.,* 811 F.Supp. 303 (E.D.Mich.1993)). The rule stated in *Arioli* pertains, however, only to RICO claims based on 18 U.S.C. § 1962(a). In this instance, plaintiffs' claims are based on 18 U.S.C. § 1962(b). Plaintiffs allege as damages that, as a result of the fraudulent deduction, they were "wrongfully deprived of substantial funds." Complaint, ¶ 83. This pleading is sufficient to state damages to business or property, since an injury under RICO need not be "separate from the harm from the predicate acts." *Sedima, S.P.R.L.*

*v. Imrex Co., Inc.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985).

██ During oral argument on the contract construction issue, I raised the issue of whether Count V properly alleged a RICO violation because it did not allege the "person"—"enterprise" distinction that is required by 18 U.S.C. § 1962. The parties have now briefed the point.

As the Court of Appeals for the Fifth Circuit has explained:

[I]n plain English, the subsections [of Section 1962 of the RICO statute] state:

(a) a person who has received income from a pattern of racketeering cannot invest that income in an enterprise.

(b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering.

(c) a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering.

(d) a person cannot conspire to violate subsections (a), (b), or (c).

Thus, RICO claims under all four subsections necessitate: 1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*. *In re Burzynski*, 989 F.2d 733, 741 (5th Cir.1993) (citation omitted) (emphasis in original).

A RICO "person" includes any individual or entity capable of holding an interest in property. 18 U.S.C. § 1961(3). A RICO "enterprise" includes a legal entity and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4).

██ Most of the litigation under Section 1962 arises out of subsection (c). In order to state a claim under subsection (c) the plaintiff must describe a "person" that is separate and distinct from the "enterprise" being used by the "person." *See, e.g., Palmer v. Nationwide Mut. Ins. Co.*, 945 F.2d 1371, 1373 (6th Cir.1991); *Guzowski v. Hartman*, 969 F.2d 211, 215–16 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 978, 122

L.Ed.2d 132 (1993). The terms "employed by" and "associated with" contemplate a person distinct from the enterprise. *See, e.g., Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir.1989). The "enterprise" is not vicariously liable under subsection (c) because such vicarious liability would violate the distinctness requirement. *Davis v. Mutual Life Ins. Co. of New York,* 6 F.3d 367 (6th Cir.1993).

The narrow issue presented by defendant's current motion is whether the "person" and "enterprise" must be distinct under subsection (b), since Count V of the Complaint alleges that Shell's activities violate 18 U.S.C. § 1962(b). In order to state a claim under subsection 1962(b), the plaintiff must allege two basic things: (1) the defendant acquired or maintained an interest in an alleged enterprise through a pattern of racketeering activity; and (2) the plaintiff suffered injury to business or property as a result of that acquisition or maintenance.

The weight of authority supports the plaintiff's contention that, in contrast to subsection 1962(c), the "person" and "enterprise" need not be distinct for purposes of subsection 1962(b). *See, In re Burzynski*, 989 F.2d 733, 743 (5th Cir.1993); *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 841–42 (4th Cir. 1990); *Landry v. Air Line Pilots Ass'n Int'l, AFL–CIO*, 901 F.2d 404, 425 (5th Cir.1990), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir. 1989); *Wilcox v. First Interstate Bank of Oregon, N.A.*, 815 F.2d 522, 529 (9th Cir. 1987); *Petro–Tech, Inc. v. Western Co.*, 824 F.2d 1349, 1361 (3d Cir.1987); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1307 (7th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989); *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1398 (9th Cir.1986). As stated in *Landry:*

In contrast to the language of subsection (c) which "requires a *relationship* between the 'person' and the 'enterprise,' subsection [ ...] (b) require[s] only the *use* of an 'enterprise' by a 'person.'" Thus the RICO person and the enterprise need not be distinct for a person to be held liable

under subsection (b). A finding of vicarious liability on the part of an enterprise which derived benefit from its representative's wrongful acts is also consistent with this view.

901 F.2d at 425 (citation omitted) (emphasis in original).

■ A corporation may be liable under Section 1962(b) *if* it actually benefits from racketeering income as distinguished from being a mere target or passive instrument of a racketeering scheme. As stated in *Schreiber:*

> Under either section 1962(a) or (b), however, the corporation necessarily must be the direct or indirect beneficiary of the pattern of racketeering activity to be both the "person" and the "enterprise."

806 F.2d at 1398.

There are district court cases to the contrary, including a case from this district. *In re Tucker Freight Lines, Inc.*, 789 F.Supp. 884 (W.D.Mich.1991) (Miles, J.). It does not appear that any Court of Appeals has held that the "person" and "enterprise" must be distinct under subsection 1962(b). Nor does there appear to be any Sixth Circuit case on the point.

I have decided to follow the weight of authority and to deny without prejudice defendant's motion to dismiss the Complaint for failure to allege a "person" distinct from the "enterprise." [3]. This is not to say that the plaintiff has stated or can prove a RICO violation. I am simply holding that the Complaint should not be dismissed on the grounds discussed in this Opinion.

### Class Certification

Plaintiffs originally brought this case in the Circuit Court for the County of Grand Traverse as a class action. After Shell removed the case to federal court, both parties filed motions regarding class certification. Plaintiffs request that the Court defer action on class certification until after it has decided the motions for summary judgment. Shell requests early determination of class certification. In its brief, Shell contends that plaintiffs have not properly defined a class nor justified prosecution of this case as a class action. Shell has not, however, supported its objections or even specified them with any particularity.

Federal Rule of Civil Procedure 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs define the class as:

> all persons, firms, concerns, receivers, trustees, personal representatives, agents, institutions, associations, partnerships, corporations, companies, and persons acting under declarations of trust who have, at any time, been entitled to royalty payments from Shell, attributed to production of oil and gas from Michigan wells under leases with Shell which contain no provision expressly or implicitly authorizing Shell to make any deductions from royalties for taxes or fees imposed upon Shell by the State of Michigan.

Complaint, ¶ 24.

The class, as plaintiffs define it, may meet all of these criteria. Plaintiffs' definition of the class requires, however, some refinement to address the problems discussed below.

The first problem is the lack of a time limit on the class. The time should be limited by the applicable statutes of limitations. The second problem is that the definition is somewhat amorphous as to the lease language that would trigger inclusion in the suit. It may be that there is little variation in leases and that the language can be specifically identified. If not, perhaps typical language can be cited. Thirdly, the number of persons

---

3. The motion is denied "without prejudice" because the Sixth Circuit may hold that under subsection 1962(b) the "person" and "enterprise" must be distinct.

in the class must be assessed after the definition is made more specific.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment on its breach of contract claim is GRANTED. Shell's motion to dismiss or for summary judgment on the claims of breach of contract, fraud, and RICO are DENIED. Shell's unopposed summary judgment motion on plaintiffs' accounting claim is GRANTED. Plaintiffs' constitutional claim is DISMISSED AS MOOT. As to class certification, plaintiffs should submit a supplemental brief addressing the issues raised in this Opinion no later than November 22, 1993. Defendant may submit a response within fourteen (14) days after service of the brief. An Order consistent with this Opinion will be entered.

## ORDER

In accordance with the Opinion issued on this date,

IT IS HEREBY ORDERED that plaintiffs' motion for partial summary judgment on its breach of contract claim (docket # 13) is GRANTED.

IT IS FURTHER ORDERED that defendant's motion for dismissal or summary judgment (docket # 12) is GRANTED IN PART AND DENIED IN PART. On the claims of breach of contract, fraud, and RICO, defendant's motion is DENIED. On plaintiffs' accounting claim, defendant's unopposed summary judgment motion is GRANTED.

IT IS FURTHER ORDERED that plaintiffs' constitutional claim is DISMISSED AS MOOT.

IT IS FURTHER ORDERED that plaintiffs submit a supplemental brief on class certification no later than November 22, 1993.